CANADIAN OVERSEAS ORES
LIMITED, Plaintiff,

v.

COMPANIA DE ACERO DEL
PACIFICO S.A., Defendant.

No. 78 Civ. 2451 (MEL).

United States District Court,
S. D. New York.

Jan. 7, 1982.

Wachtell, Manheim & Grouf, New York City, for plaintiff; Andrew Freeman, Franz S. Leichter, Stephen M. Harnik, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant; George J. Grumbach, Jr., Louis B. Kimmelman, New York City, of counsel.

LASKER, District Judge.

Canadian Overseas Ores Limited ("CANOVER") sues to recover for spare parts and related equipment allegedly delivered to the Compania Minera Santa Fe ("Santa Fe") in 1971 and to recover for loans allegedly made to Santa Fe prior to 1978, by its predecessor, Canadian Foreign Minerals Limited ("CAFOMI"). CANOVER alleges that Compania de Acero Del Pacifico S.A. ("CAP") is liable for these debts of Santa Fe because CAP acquired Santa Fe in November, 1971 and thereby assumed these liabilities.

CAP moves to dismiss the complaint on the grounds that 1) Count One of the com-

plaint, relating to the sale of spare parts and related equipment, is barred by the statute of limitations, 2) Chile is a more convenient forum, and 3) this court lacks subject matter jurisdiction under 28 U.S.C. § 1330(a) because CAP is a foreign entity immune from suit under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602–1611. Since the filing of the instant motions, the Court of Appeals issued its decision in *Verlinden B. V. v. Central Bank of Nigeria*, 647 F.2d 320 (2d Cir. 1981), the effect of which is considered below.[1]

## I.

CAP moves to dismiss Count One of the complaint on the ground that it is barred by the New York statute of limitations governing sales contracts. The parties agree that if the four year limitation of the New York Uniform Commercial Code (the "UCC") governs,[2] Count One is barred, while if the six year limitation for contract actions under New York's general statute of limitations governs,[3] Count One is not barred.

CANOVER argues that the four year limitation contained in the UCC does not apply because the UCC does not apply generally to this action. CANOVER relies on § 1–105(1) of the UCC which provides that where, as here, the contract itself contains no provision as to what law is to be applied, "this Act applies to transactions bearing an appropriate relation to this state." CANOVER contends that since New York was not the place of contracting, negotiation or performance, and was not the location of the subject matter of the contract, the transaction does not bear an "appropriate relation" to New York. It follows, according to CANOVER, that since the UCC does not apply to this action, the limitations contained in that Act do not apply. Instead, CANOVER asserts the New York borrowing statute, N.Y.C.P.L.R. § 202, governs because the cause of action accrued outside New York. Under § 202, New York applies either its own statute of limitations or that of the foreign jurisdiction where the cause of action arose, whichever is shorter. CANOVER argues that a six year limitation period must be applied here because New York's limitation period for contract actions not governed by the UCC is six years under N.Y.C.P.L.R. § 213 and Bermuda, where the cause of action arose, would also apply a six year limitation period.

CAP maintains that New York has only one statute of limitations for all actions alleging breach of a contract for the sale of goods, the four year limitation under N.Y. U.C.C. § 2–725(1). According to CAP, the exception from the terms of § 213, the general statute of limitations, for provisions "in article 2 of the uniform commercial code . . ." was intended to take all sales contracts out of the general limitations period of six years, even though the substantive provisions of the UCC may not govern the particular sales contract. Moreover, CAP contends that CANOVER's reliance on the UCC choice-of-law provision, § 1–105, is misplaced because resort to choice-of-law

---

1. On November 14, 1980, the parties were informed that CAP's motion to dismiss or stay under the doctrine of *forum non conveniens* would be denied. Shortly thereafter, the parties were informed that CAP's motion to dismiss Count One of the complaint would be granted. Before we had an opportunity to confirm these decisions in writing, CAP filed its motion under the FSIA and the Court of Appeals issued its *Verlinden* decision. The parties were informed that a written opinion on all the pending motions, including those for which an oral decision was informally given, would be forthcoming. CAP's alternative request for a stay of this action until related litigation in Chile is completed is not considered since our disposition of the other motion renders the issue of a stay moot.

2. N.Y.U.C.C. § 2–725(1) is entitled "Statute of Limitations in Contracts for Sale" and provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . ."

3. N.Y.C.P.L.R. § 213 provides:

    "The following actions must be commenced within six years:

    \*    \*    \*    \*    \*    \*

    2. an action upon a contractual obligation or liability express or implied, except as provided in article 2 of the uniform commercial code . . ."

provisions is only appropriate where there is a conflict between local law and the law of another jurisdiction, *see* Restatement (Second) of Conflict of Laws, § 2, comment *a*(3) (1971), and here there is no such conflict because New York law applies to the question, even if in some instances New York "borrows" shorter statutes of limitation of other jurisdictions under § 202. CAP asserts that § 1–105 of the UCC cannot be used to *create* a conflict between § 2–725(1) of .the UCC and N.Y.C.P.L.R. § 213. Finally, CAP relies on the Official Comment to § 2–725 of the UCC to urge that § 2–725 was intended to introduce a uniform statute of limitations for all sales contracts and that CANOVER's statutory interpretation would preclude such uniformity by providing one limitation period for sales contracts governed by the substantive provisions of the UCC and another period for sales contracts governed by the substantive provisions of foreign law. It is said that this disparity would also violate New York policy by encouraging forum shopping and the prosecution of foreign claims in New York, since it would afford a longer statute of limitation to parties who bring causes of action governed by foreign law than to parties who bring causes of action governed by New York law.

■ A federal diversity court must apply the statute of limitation that a court of the forum state would apply. *Guaranty Trust Company v. York*, 326 U.S. 995, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Both parties agree that the cause of action in this case accrued outside of New York. In such circumstances, New York applies either New York's limitation period or the limitation period of the jurisdiction where the cause of action accrued, whichever is shorter. N.Y.C.P.L.R. ·§ 202. Assuming that the cause of action accrued in Bermuda and that Bermuda's limitation period is six years, as CANOVER contends, the question remains whether the applicable New York limitation period is the six year period of N.Y.C.P.L.R. § 213 or the four year period of the UCC § 2–725, since Bermuda's limitation period of six years is irrelevant under § 202 if New York's is shorter.

■ Neither party has presented any decision by the New York Courts (nor have we found any) on whether § 213 or § 2–725 governs a sales contract where the substantive law to be applied is not New York law. All relevant factors, however, point to the conclusion that a New York court would apply the four year limitation period under § 2–725. First, the literal language of § 2–725 broadly encompasses "an action for a breach of *any* contract for sale." (Emphasis added). Second, § 2–725 expresses a policy of not extending the time for bringing an action on a sales contract: while the contracting parties may reduce the limitation period, § 2–725 does not permit them to extend it. Third, while CANOVER contends that the facts of this case make the UCC inapplicable to this transaction, CANOVER relies on a weak reed as an alternative: that is, N.Y.C.P.L.R. § 213. Section 213 appears to carve out an exception for *all* sales contracts from its provision for a six year limitation period for contract actions. *See Voth v. Chrysler Motor Corporation*, 545 P.2d 371, 375 (1976). In fact, Section 213 uses the language "except as provided in Article 2 of the Uniform Commercial Code ..." to describe the exception to its six year limitation period, rather than more limited language, such as "except cases arising under" the UCC. This reading of § 213 is supported both by New York's policy by applying the shorter time period when more than one time period may apply, *see e.g.*, N.Y.C.P.L.R. §§ 201, 202, 213 and N.Y.U.C.C. § 2-725, and the fact that a contrary construction would, as CAP argues, encourage forum shopping and the prosecution of causes of action governed by foreign law. *Cf.* 1 J. Weinstein, H. Korn & A. Miller, New York Civil Practice ¶ 327.01 (1979). Finally, § 2-725 evidences a clear policy of uniformity for statutes of limitations governing sales contracts. N.Y.U.C.C. § 2–725, Official Comment. As CAP contends, this uniformity would be precluded if ·CANOVER's proposed statutory interpretation were accepted, for then a different limitation period would govern any action on a sales contract where foreign substan-

tive law were to be applied and the foreign jurisdiction did not happen to have a limitation period the same as New York. *See Alaska Airlines, Inc. v. Lockheed Aircraft Corporation*, 430 F.Supp. 134, 140 (D.Alas. 1977) (applying UCC limitation period to sales contract not governed by substantive provisions of the UCC in view of policy against extending limitation period.)

For the reasons stated, we conclude that Count One of the complaint is time barred under N.Y.U.C.C. § 2–725 and CAP's motion to dismiss it is granted.

## II.

CAP moves to dismiss the complaint under the doctrine of *forum non conveniens* on the grounds that 1) the courts of Chile provide an alternative forum where CAP is amenable to suit (and where a suit presenting the same issues as this suit is already pending), 2) the transactions are foreign in nature since they involve Santa Fe, a Chilean mining company with its principal place of business in Santiago, CAP, a Chilean corporation, and CAFORE and CAFOMI, corporations incorporated in the Bahamas and Canada respectively, with their principal places of business in Hamilton, Bermuda, and since the relevant negotiations all occurred in the Spanish language and in Chile, 3) all CAP's witnesses reside in Chile and those who are not CAP employees would not be subject to compulsory process from this court, 4) even if CAP's witnesses were to appear at trial here, their appearance would impose an unnecessary financial burden since transportation, lodging, and interpreters for trial would be required, 5) the need for continuous translation of testimony would render the resolution of the credibility issues more difficult, and 6) the documents material to CAP's defense are voluminous, were all kept in the Spanish language and in accordance with Chilean accounting procedures, and are all located in Chile. In addition, CAP emphasizes that any judgment obtained in Chile will be enforceable in New York as well as Chile and that procedural protections applicable in Chilean courts ensure that a fair trial will occur in Chile. CAP argues that the procedural protection available here is incomplete because, in the event it is held liable, it would look to the Santa Fe-Santa Barbara stockholders for indemnification and the stockholders only agreed to the jurisdiction of the courts in Santiago, Chile, with respect to litigation arising out of the acquisition agreements. Accordingly, since the stockholders of Santa Fe and Santa Barbara reside in various countries, they could be impled in Santiago but not in an American court. Finally, CAP contends that factors relating to the public interest support application of the doctrine of *forum non conveniens* since this dispute has no relation with this forum, is governed by Chilean law, and is already the subject of Chilean litigation.

CANOVER responds that the doctrine of *forum non conveniens* is not applicable because the alternative forum asserted by CAP, the courts of Chile, does not assure CANOVER of a fair trial. According to CANOVER, the Chilean judiciary is subject to the influence of the military junta governing Chile and therefore CANOVER would run the risk in any litigation in Chile that the government would exercise its influence to favor CAP, a state-owned corporation. CANOVER emphasizes that while the Chilean constitution guarantees the independence of the judiciary, the military junta has powers to amend or set aside constitutional provisions by executive decree. In addition, CANOVER maintains that procedural limitations on discovery in Chilean courts would prevent CANOVER from establishing its case; for example, CANOVER cites the lack of provisions for oral deposition, which it contends is necessary to establish the errors in the audit upon which CAP's defense is based, and the facts that in Chilean courts the number of witnesses a party may call on particular issues is limited and the judge conducts all the questioning of witnesses.

Finally, CANOVER argues that, even if Chile presented an adequate alternative forum, CAP has failed to present sufficient justification to disturb CANOVER's choice

of forum. CANOVER asserts that CAP has not established substantial inconvenience resulting from litigation here and that the lengthy negotiations asserted by CAP did not in fact take place. In addition, CANOVER contends that the testimony of Chilean witnesses could be taken by letters rogatory and that many of the relevant witnesses reside outside of Chile. Moreover, CANOVER maintains that the fact that Chilean law is applicable is insignificant in a *forum non conveniens* determination and that, in any event, many of the transactions at issue arose in Bermuda rather than Chile. CANOVER also asserts that the case has a nexus with this forum because CAP is authorized to do business in New York and that a substantial portion of the ownership of CANOVER is American.

CAP replies that CANOVER has failed to sustain its burden of demonstrating that it will not receive a fair trial in Chile and presents its own experts to support the proposition that the independence of the Chilean judiciary remains in full force despite the fact that the country is ruled by a military junta. Moreover, CAP cites cases since the junta has been in power in which the Chilean courts have decided against the government's interests. CAP also asserts that CANOVER's arguments as to the lack of procedural safeguards in Chilean courts are baseless because the Chilean courts utilize essentially the same procedures as all civil law countries. Mere differences in particular procedures, such as oral depositions, do not justify a refusal to apply the *forum non conveniens* doctrine, according to CAP.

■ CAP's motion to dismiss the complaint under the doctrine of *forum non conveniens* is denied. The *forum non conveniens* doctrine presupposes at least one alternative, and adequate, forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67 (2d Cir. 1981). "At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum ... In rare circumstances ... the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Piper Aircraft v. Reyno*, —— U.S. ——, —— n. 18, 102 S.Ct. 252, 265 n. 18, 70 L.Ed.2d 419 (1981), (plurality opinion). We conclude that this case presents one of such "rare circumstances" where the adequacy of the alternative forum asserted by CAP has not been established and cannot be presumed.

■■ The parties have submitted voluminous materials relating to the issue whether the Chilean judiciary is independent or subject to the influence of the ruling military junta, and whether the procedures available for the discovery of documents and testimony in Chilean courts are adequate. With respect to the latter point, CAP has successfully demonstrated that the Chilean procedures are essentially the same as in other civil law countries, including France, Italy and Spain. Moreover, it is well settled that mere differences in procedure do not bar dismissal under the doctrine of *forum non conveniens*. Indeed, the doctrine is "designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co. v. Reyno, supra* at ——, 102 S.Ct. at 263. CANOVER has failed to raise a serious question as to the inadequacy of procedures for the discovery of evidence in the Chilean judicial system.

However, CANOVER has raised serious questions about the independence of the Chilean judiciary vis a vis the military junta currently in power. Having carefully considered the views of eminent experts on both sides, a significant doubt remains whether CAP could be assured of a fair trial in the Chilean courts in view of the fact that CAP is a state owned corporation. Specifically, the expressed power of the junta to amend or rescind constitutional provisions by decree impugns the continuing independence of the judiciary regardless of the fact that it appears that the constitutional provisions relating to the independence of the judiciary are currently in force. Affidavit of Henry P. DeVries, Professor of Latin American Law at Columbia Universi-

ty School of Law, ¶ 5, *citing* Executive Decree of September 11, 1973; Executive Decree No. 128 of November 12, 1973; Executive Decree No. 527 of June 17, 1974; Executive Decree No. 788 of December 2, 1974. There is some suggestion that the junta has in fact interceded in a pending case to request reversal of an interlocutory decision where the government was not a party. *Id.* at n. 6. While we do not hold as a matter of fact that the Chilean judiciary is not independent of the junta or that CANOVER could not possibly receive a fair trial there, the doubts raised are sufficiently serious to put the burden on CAP, the party asserting the appropriateness of the Chilean forum, to demonstrate its adequacy. Since we are unable to conclude from the differing views expressed by the experts that Chile would be an adequate forum, CAP has failed to carry its burden of persuasion that CANOVER's choice of forum should be disturbed. Accordingly, its motion to dismiss the complaint under the doctrine of *forum non conveniens* is denied.[4]

### III.

CAP moves to dismiss the complaint under the Foreign Sovereign Immunities Act of 1976 ("FSIA") on the ground that it is a foreign sovereign entitled to immunity under the Act. CANOVER opposes the motion on the grounds that 1) the motion is barred under Fed.R.Civ.Pr. 12(h) since CAP had earlier moved to dismiss or stay the action without asserting the defense of immunity, 2) CAP waived its immunity under 28 U.S.C. § 1605(a)(1) by moving to dismiss without asserting its immunity and by participating in the litigation without invoking immunity, 3) CAP consented to be sued here by appointing the Secretary of State of New York as its lawful agent to receive process, and 4) the defense of sovereign immunity is not available because, if CAP relies on the 1971 contract between CAP and CAFOMI (CANOVER's predecessor), the issue of expropriation of property will be presented since it is CANOVER's position that the agreement was forced upon CAFOMI by the Chilean government.

CAP replies that sovereign immunity is an affirmative defense which is not waived under Rule 12 and that its immunity involves the subject matter jurisdiction of the court, a defense that is not waivable under Rule 12. CAP emphasizes, moreover, that it specifically reserved its defense of sovereign immunity in its petition for removal, in its opposition to the motion for remand, and in the stipulation by which it agreed to accept the amended complaint and the substitution of plaintiffs. As to alleged waiver under the FSIA itself, CAP points to its legislative history to show that Congress intended that a claim of sovereign immunity be waived only if it is not pled, as an affirmative defense, in a responsive pleading. CAP relies on provisions in the Federal Rules of Civil Procedure distinguishing pleadings from motions and providing that affirmative defenses are waived only if they are not contained in the answer. *E.g.,* Fed.R.Civ.Pr. 5(a); 7; 8(c); 10(c); 12. CAP further contends that the appointment of the Secretary of State of New York to receive process cannot be considered a waiver of its sovereign immunity because such service was provided for in § 1608(b)(2) of the Act and relates only to personal, not subject matter, jurisdiction. It argues, moreover, that a waiver cannot be inferred from the fact that the Secretary of State of New York is authorized by CAP to accept service since the law of New York requires it. Finally, CAP asserts that this suit concerns a breach of contract claim, not an expropriation claim, and accordingly, the exception in the FSIA for expropriation claims is inapplicable.

The FSIA purports to create jurisdiction in the federal courts over "any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity . . . " 28 U.S.C. § 1330(a). It has

---

4. Since CAP has failed to establish the threshold proposition that an adequate alternative forum exists, we need not reach the balance of factors ordinarily warranted in a *forum non conveniens* decision comparing two fora.

already been determined that CAP is a "foreign state" within the meaning of the FSIA. *Herzberger v. Compania de Acero del Pacifico*, 78 Civ. 2451 (S.D.N.Y. August 17, 1978). The Act provides, with exceptions not relevant here, that ". . . a foreign state shall be immune from the jurisdiction of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. Section 1605 provides in relevant part:

"(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

\*    \*    \*    \*    \*    \*

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United· States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."

■ CANOVER's argument that CAP waived its immunity "by implication" under § 1604(a)(1) when it moved to dismiss the complaint under Fed.R.Civ.Pr. 12(b)(1) and (6) without asserting its immunity is unpersuasive. Although sparse, the available legislative history supports CAP's position that sovereign immunity is an affirmative defense which is not waived by not being included in a motion under Rule 12 against the complaint. According to the House Report on the Act, "[a]n implicit waiver would also include a situation where a foreign state has filed a *responsive pleading* in an action without raising the defense of sovereign immunity." H.R. Report No. 94–1487, 94th Cong., 2d Sess. 18. (Emphasis added). In addition, the House Report confirms that sovereign immunity was considered an "affirmative defense which must be specially pleaded." *Id.* at 17. *See also Verlinden B. V. v. Central Bank of Nigeria*, 647 F.2d 320, 326-27 (2d Cir. 1981). The term "pleading", as defined in the Federal Rules of Civil Procedure, does not encompass a motion under Rule 12, or any motion for that matter. *See* Fed.R.Civ.Pr. 7(a)(b).[5] The distinction between "pleadings" and "motions" is maintained throughout the Rules. *E.g.*, Fed.R.Civ.Pr. 5(a), 7, 10(c), 12. Moreover, as an "affirmative defense," sovereign immunity is only waived under the Federal Rules by failure to raise it in a responsive pleading, not by failure to include it in a motion to dismiss the complaint. Fed.R. Civ.Pr. 8(c).[6] And to the extent that an

---

5. Fed.R.Civ.Pr. 7 provides in relevant part:
    "(a) Pleadings. There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.
    (b) Motions and Other Papers
    (1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is ful-

filled if the motion is stated in a written notice of the hearing of the motion."

6. Fed.R.Civ.Pr. 8(c) provides:
    "Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designed a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

exception to a foreign state's sovereign immunity is a predicate to the court's subject matter jurisdiction under 28 U.S.C. § 1330(a), Rule 12 by its terms does not purport to provide that such a defense is waived if not included in a motion directed against the complaint, since the rule is limited to assertions of lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service of process. Fed.R.Civ.Pr. 12(h)(1).[7] Thus, construing the statutory language "by implication" in accordance with the available legislative history and the relevant provisions of the Federal Rules of Civil Procedure, it appears that Congress intended that the defense of sovereign immunity would be waived only if not contained in the answer to the complaint or other responsive pleading. The references to "responsive pleading" and to "affirmative defense" are consistent only with CAP's reading of the law.

CANOVER's argument that Congress did not intend for the term "responsive pleading" to refer to pleadings as defined in the Federal Rules of Civil Procedure is based on § 1608(d) of the Act, which provides that "... a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section." 28 U.S.C. § 1608(d). According to CANOVER, the phrase "or other pleading" confirms its thesis that the term "responsive pleading" refers to motions under Rule 12 as well as to the answer. The argument is inexplicable. CANOVER presents no basis for supposing that this reference is not intended to adopt the Federal Rules definition of pleading. Indeed, the House Report states that § 1608(d) was intended to provide a foreign state the same time to plead as is given the United States under R. 12(a):

"*Time to Answer or Reply.*—Subsection (d) of section 1608 gives each foreign state, political subdivision thereof or agency or instrumentality of a foreign state or political subdivision up to 60 days from the time service is deemed to have been made in which to answer or file a responsive pleading. This corresponds to similar provisions applicable in suits against the United States or its officers or agencies. Rule 12(a) F.R.Civ.P."

Fed.R.Civ.Pr. 12(a) provides:

"The United States or an officer or agency thereof shall serve an answer to the complaint or to a cross-claim, or a reply to a counterclaim, within 60 days after the service upon the United States attorney of the pleading in which the claim is asserted."

Thus, the reference in § 1608(d) to "other responsive pleadings" is inconsistent with CANOVER's argument, and, to the contrary, supports CAP's contention that the term "pleading" was intended to have the same meaning as in the Federal Rules of Civil Procedure.

■ CANOVER's contention that sovereign immunity under the FSIA must be regarded as relevant to in personum and not subject matter jurisdiction and is therefore waived under Fed.R.Civ.Pr. 12(h) rests on the proposition that sovereign immunity cannot be an element of subject matter jurisdiction because it is waivable. While it is generally true that lack of subject matter is a defect which is not waivable by the parties, in FSIA Congress created a unique subject matter jurisdiction in the federal courts which may in fact rest on the waiver by a foreign state. Section 1330(a), quoted above, is the jurisdictional predicate of this suit, and it provides subject matter jurisdiction only where the foreign suit is not entitled to immunity. The remainder of the Act provides that a foreign state is not

---

**7.** Fed.R.Civ.Pr. 12(h) provides in relevant part:

"(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

\*    \*    \*    \*    \*    \*

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

entitled to immunity when it waives that immunity. Accordingly, under this unique jurisdiction, a foreign state, by waiving its immunity, may waive what would otherwise be a defect in the subject matter of the court. In short, "the bill provides for subject matter *and* personal jurisdiction ... over foreign states ..." H.R.Rep.No. 94–1487, 94th Cong., 2d Sess. 18.

■ Similarly, CANOVER's contention that CAP waived its immunity by appointing the Secretary of State to receive process is without merit. At most, such an appointment may waive objections to *personal* jurisdiction. It cannot be construed to waive objections to the subject matter jurisdiction of any court, nor to waive affirmative defenses, like sovereign immunity, which may be available in particular suits.

■ Nor is CANOVER persuasive in contending that sovereign immunity is not available under § 1604(a)(3) because "rights in property taken in violation of international law are in issue ...". Congress intended § 1604(a)(3) to apply only to cases involving "expropriation" of property. As the House Report states, the exception to immunity created by the section "in no way affects existing law on the extent to which, if at all, the 'act of state' doctrine may be applicable." *Id.* at 20. That statement is followed by a reference to 22 U.S.C. § 2370(e)(2), the Hickenlooper Amendment, which in turn provides, in relevant part:

"Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law...."

The phrase used in the Hickenlooper Amendment "claim of title or other right to property" has been interpreted to apply only to takings of tangible property, not to include intangible interests like the contractual right to payment asserted by CANOVER here, *Menendez v. Saks & Co.*, 485 F.2d 1355, 1372 (2d Cir. 1973), *rev'd in part on other grounds sub. nom., Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976), *citing French v. Banco Nacional de Cuba*, 23 N.Y.2d 46, 295 N.Y.S.2d 433, 242 N.E.2d 704 (1968) (" 'a claim for breach of contract' is not a 'claim of title or other right to property' ... and the repudiation of a contractual obligation does not amount to a 'confiscation or other taking' as those terms are used in the statute.") Were the phrase "rights in property taken in violation of international law" in the FSIA interpreted more broadly than the similar phrase utilized in the Hickenlooper Amendment, Congress would have conferred jurisdiction for suits only to have them dismissed in accordance with the act of state doctrine. The legislative history of FSIA indicates that such an incongruous result was not intended. Rather, § 1604(a)(3) appears to be intended to match the exception to the act of state doctrine created by the Hickenlooper Amendment, just as § 1604(a)(2) corresponds to the "commercial activities" exception to the act of state doctrine announced in *Alfred Dunhill of London v. Republic of Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1975).

This reading of the FSIA exceptions to sovereign immunity is supported by the further requirements in § 1604(a)(3) that "the property taken in violation of international law" or "any property exchanged therefor" be "present in the United States in connection with a commercial activity carried on in the United States by a foreign state" or be "owned or operated by an agency or instrumentality of the foreign state ... engaged in commercial activity in the United States." This language of § 1604(a)(3), applicable to tangible property, is on its face inapplicable to a contractual right to be paid. In short, as CAP argues, the contractual right to payment asserted by CANOVER has not been "taken." Neither CAP

nor any other party claims ownership of the right to be paid under the contracts which CANOVER asserts, nor has any specific fund to which CANOVER is entitled been allegedly taken. CANOVER's complaint rests on a breach of contract claim and accordingly, its claim is not within the purview of § 1604(a)(3).

Moreover, even though CANOVER asserts that CAP's defense will rest on a contractual agreement which CANOVER claims was foisted upon its predecessor by the Chilean government in pursuit of its nationalization policy, this assertion does not change the fact that CANOVER's claim is simply for breach of contract. Indeed, CANOVER itself states that "expropriation without compensation is not raised by CANOVER in this action ..." (Plaintiff's Memorandum of Law in opposition to Defendants' Motion to Dismiss, p. 5) and that "CANOVER has not repudiated the agreement forced upon CAFOMI ... Its position is that the obligations of Sante Fe became those of CAP through its acquisition of Sante Fe by nationalization and that CAP–CAFOMI agreement confirms CAP's assumptions of these liabilities." (*Id.* at 4). Thus, CANOVER claims that an expropriation occurred through the very agreement on which it relies, at least in part, to establish CAP's liability. The proposition is without merit. In addition, federal question jurisdiction is judged on the face of the complaint, not by defenses which may be raised. *Verlinden, supra* at 326–27, *citing Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Since CANOVER has failed to demonstrate the applicability of any of the FSIA exceptions to sovereign immunity, CAP's motion to dismiss the complaint on the ground that it is immune to suit under FSIA is granted.

### IV.

■ In any event, the Court of Appeals' recent decision in *Verlinden B. V. v. Central Bank of Nigeria*, 647 F.2d 320 (2d Cir. 1981) divests this court of subject matter jurisdiction over the action. In *Verlinden*, the court considered whether "a foreign plaintiff [may] sue a foreign state in a federal court for breach of an agreement not governed by federal law?" *Id.* at 322. Although the FSIA Act purports to grant such jurisdiction, the Court found "jurisdiction lacking in the constitutional sense." *Id.* There is no dispute that the present case involves a foreign plaintiff suing a foreign entity. CANOVER nevertheless contends that this case is distinguishable from *Verlinden* because 1) this action reached federal court by removal rather than having been commenced here, 2) CAP is engaged in business in the United States and CANOVER has significant American ownership, and 3) issues of expropriation, which the Court of Appeals excepted from the scope of its decision, are presented here. The arguments are without merit. To the extent that 28 U.S.C. § 1441(d) authorizes removal of cases between a foreign plaintiff and a foreign state, it is unconstitutional for the same reasons that the Court of Appeals found original jurisdiction to be unconstitutional. If the jurisdiction exceeds the constitutional limits on the power of the federal courts, it makes no difference whether Congress purports to grant such jurisdiction by way of original jurisdiction or removal jurisdiction. The constitutional limits are the same. Moreover, the fact that CAP may be engaged in business in the United States and that CANOVER has significant American ownership is irrelevant to the jurisdictional question decided in *Verlinden*, since there is no assertion that CANOVER is not a "foreign plaintiff" and we have previously decided that CAP is a "foreign state." Finally, as discussed above, this suit is not one to recover allegedly expropriated property and accordingly 28 U.S.C. § 1350, conferring jurisdiction over suits "by an alien for a tort only, committed in violation of the law of Nations," does not provide a constitutional jurisdictional predicate for the suit. As the Court of Appeals stated in the footnote relied on by CANOVER, "commercial violations ... do not constitute violations of international law." 647 F.2d at 325, n. 16.

\*     \*     \*     \*     \*     \*

In sum, CAP's motion to dismiss Count One of the complaint is granted; its motion to dismiss the complaint under the doctrine of *forum non conveniens* is denied; its motion to dismiss the complaint under the Foreign Immunities Act is granted; and the complaint is dismissed for lack of subject matter jurisdiction.

Submit judgment on notice.