**KALAMAZOO SPICE EXTRACTION CO., Plaintiff-Appellant,**

v.

**The PROVISIONAL MILITARY GOVERNMENT OF SOCIALIST ETHIOPIA, Defendant-Appellee.**

No. 82–1521.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1983.

Decided March 9, 1984.

Thomas G. Parachini, Brown, Colman & DeMent, Kalamazoo, Mich., John J. McGrath, Jr., David R. Garcia, John P. Dean, Mark B. Feldman (argued), Donovan, Leisure, Newton & Irvine, Washington, D.C., for plaintiff-appellant.

Jack Weinberg (argued), Charles L. Rosenzweig, Graubard, Moskovitz, McGoldrick, Dannett & Horwotz, New York City, Bert Burgoyne, Bromberg, Robinson, Shapero, Cohn & Burgoyne, Southfield, Mich., for defendant-appellee.

Morris Harrell, American Bar Ass'n, Chicago, Ill., David Gantz, Oppenheimer & Wolff, Washington, D.C., for amicus curiae American Bar Ass'n.

Michael F. Hertz (argued), Howard S. Scher, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., for amicus curiae United States.

Before ENGEL and KEITH, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

KEITH, Circuit Judge.

This is an appeal from a district court judgment, 543 F.Supp. 1224, which dismissed appellant's counterclaim. The district court held that the act of state doctrine as interpreted by the Supreme Court in *Banco Nacional De Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), precluded judicial inquiry into the validity of an expropriation by the Ethiopian government of shares in an Ethiopian business entity held by an American corporation.

Appellant, Kalamazoo Spice Extraction Company (Kal-Spice) is an American corporation which, in a joint venture with Ethiopian citizens, established the Ethiopian Spice Extraction Company (ESESCO) in 1966, an Ethiopian based corporation. Kal-Spice owned approximately 80% of the shares of ESESCO. Kal-Spice also contributed capital, built a production facility, and trained ESESCO's staff, which consisted of Ethiopian citizens. Production began in 1970 after several years of preparation, construction and training.

The Provisional Military Government of Socialist Ethiopia (PMGSE) came to power in 1974. As part of its program to assure that Ethiopian industries would "be operated according to the philosophy of Ethiopian socialism", the PMGSE announced the seizure of "control of supervision and a majority shareholding" of a number of corporations, including ESESCO, in February 1975. As a result of the expropriation, Kal-Spice's ownership interest in ESESCO was reduced from 80% to approximately 39%.

In December 1975, the PMGSE established a Compensation Commission. The Commission's purpose was to compensate those claimants whose property had been expropriated. Kal-Spice claimed it was entitled to compensation of $11,000,000. In October 1981, the PMGSE offered Kal-Spice the equivalent of $450,000 in Ethiopian currency. Kal-Spice, however, has rejected the PMGSE's offer. The PMGSE contends that Kal-Spice should have accepted the offer because: 1) Kal-Spice retains an interest in ESESCO of approximately 40% and 2) Kal-Spice carried expropriation insurance based on a total investment in ESESCO of less than $1,000,000.

A few months before the PMGSE's expropriation program, Kal-Spice placed an order with ESESCO for the purchase of spices to be delivered to Kal-Spice in Michigan between November 1, 1974 and November 5, 1975. ESESCO shipped spices worth more than 1.9 million dollars to Kal-Spice. These shipments occurred in several installments, some before the February 3, 1975 seizure of ESESCO and some after that date. The post-expropriation shipments were drawn from inventories seized on the expropriation date.

According to Kal-Spice, it continued to make payments for these shipments for a while after the expropriation until it realized that the PMGSE did not intend to compensate it for the expropriated property. ESESCO, now controlled by the PMGSE, filed a breach of contract action against Kal-Spice, demanding payment for goods received by Kal-Spice.[1] Kal-Spice counterclaimed against ESESCO as the *alter ego* of the PMGSE, seeking, *inter alia,* damages for the expropriation of ESESCO.

Once the suit reached the United States District Court of the Western District of Michigan, the court decided that the act of state doctrine precluded adjudication of the claims against the PMGSE based on the expropriation of Kal-Spice's interests. The district court further held that the Treaty of Amity between the United States and Ethiopia was "so inherently general, doubtful, and susceptible of multiple interpretation" that it could not be applied by a United States court to satisfy the "treaty exception" to the act of state doctrine.

---

1. ESESCO originally filed its complaint in the United States District Court for the Southern District of New York. On Kal-Spice's motion the case was transferred to the Western District of Michigan pursuant to 28 U.S.C. § 1404(a).

We disagree, and reverse and remand for the reasons set forth below.

### The Act of State Doctrine

■ The act of state doctrine is an exception to the general rule that a court of the United States, where appropriate jurisdictional standards are met, will decide cases before it by choosing the rules appropriate for decision from among various sources of law, including international law. *First National City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 763, 92 S.Ct. 1808, 1811, 32 L.Ed.2d 466 (1972). The roots of the doctrine can be traced to *Underhill v. Hernandez*, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897) where the Supreme Court held:

> Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through means open to be availed of by sovereign powers as between themselves.

Thus, the Supreme Court's decision in *Underhill* was a recognition that generally the courts of one nation will not sit in judgment on the acts of another nation when those acts occur within the latter's borders.

The modern restatement of the doctrine is contained in *Banco Nacional De Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964).

In *Sabbatino* the Court stated:

> [T]he Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign government, extant and recognized by this country at the time of the suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law.
>
> 376 U.S. at 428, 84 S.Ct. at 940.

Justice Harlan, writing for the majority in *Sabbatino*, noted that the act of state doctrine has "constitutional underpinnings." These constitutional underpinnings, according to Justice Harlan, arise out of a recognition of the separation of powers doctrine and the fact that the executive branch is usually best equipped to deal with matters of foreign policy since this area often requires "political acts." Moreover, action by the judiciary while the executive branch is simultaneously acting upon the same matter could potentially be embarrassing or detrimental to those executive efforts.

However, after *Sabbatino*, the Court began to limit the breadth of the act of state doctrine and ruled that United States courts could be the proper forum for the adjudication of expropriation claims in certain circumstances. In *First National City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972) (Citibank) the Court ruled that expropriation claims may be heard as set-offs in some circumstances. A plurality of the Court in *Citibank* recognized the "Bernstein exception" as a basis for a court to exercise jurisdiction over the acts of a foreign sovereign committed within that sovereign's borders. The Bernstein exception consists of a letter from the United States Department of State advising a court that foreign relations considerations do not necessitate an application of the act of state doctrine.[2]

A further narrowing of the act of state doctrine was the result in *Alfred Dunhill of London, Inc. v. Cuba*, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). The

---

**2.** The "Bernstein exception" derives its name from *Bernstein v. N.Y. Nederlandsche-Amerikaansche Stoomvaart-Maat-schaapij*, 173 F.2d 72 (2d Cir.1949), *modified by*, 210 F.2d 375 (2d Cir.1954) (per curiam) where the State Department advised the Second Circuit that foreign relations considerations did not require the application of the act of state doctrine.

Justice Rehnquist's opinion in *Citibank* which found the Bernstein exception dispositive was joined only by Chief Justice Burger and Justice White. Justices Douglas and Powell concurred in two separate opinions. Consequently, it appears that the Bernstein exception may have doubtful utility since a majority of the Court did not approve its use.

court held in *Dunhill* that immunity from the United States judiciary through the act of state doctrine was granted to foreign sovereigns for acts within their borders. However, in order for there to be act of state immunity, the act in question must be public and not commercial in nature. Justice White, writing for four of the justices, analogized the act of state doctrine with sovereign immunity and reasoned that the act of state doctrine, like sovereign immunity, should not immunize foreign sovereigns when they have acted in a commercial capacity.[3]

### The Treaty Exception to the Act of State Doctrine

▮ It is against this background of Supreme Court decisions that appellant Kal-Spice, as well as the United States Departments of State, Treasury, Justice, and the American Bar Association, as amici curiae, request that this Court recognize a "treaty exception" to the act of state doctrine. According to appellant and amici, the following language in *Sabbatino* provides the basis for a treaty exception:

> [T]he Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, *in the absence of a treaty or other unambiguous agreement regarding controlling legal principles*, even if the complaint alleges that the taking violates customary international law (emphasis added).

This language and the existence of a treaty between the United States and Ethiopia asserts appellant and amici, requires a "treaty" exception to the rule that a United States court will not exercise jurisdiction over a foreign sovereign for an act done by that sovereign within its borders. The treaty in existence between the United States and Ethiopia is the 1953 Treaty of Amity and Economic Relations (Treaty of

Amity). Article VIII, paragraph two of that treaty provides:

> Property of nationals and companies of either High Contracting Party, including interests in property, shall receive the most constant protection and security within the territories of the other High contracting party. *Such property shall not be taken except for a public purpose, nor shall it be taken without prompt payment of just and effective compensation* (emphasis added).

Kal-Spice unsuccessfully argued before the district court that this treaty provision was the type referred to by the Supreme Court in *Sabbatino*, which would allow a United States court to exercise jurisdiction over a claim of expropriation of property by a foreign sovereign. Specifically, Kal-Spice alleged that the "prompt payment of just and effective compensation" provision of the Treaty of Amity set forth controlling legal principles which was referred to by the Supreme Court in *Sabbatino*.

The district court, however, did not agree with Kal-Spice's assertion. Instead, the district court agreed with the PMGSE's position that this provision of the treaty calling for the "prompt payment of just and effective compensation" was ambiguous. It found that this provision was "so inherently general, doubtful and susceptible to .multiple interpretation that in the absence of an established body of law to clarify their meaning a court cannot reasonably be asked to apply them to a particular set of facts." The failure of the treaty to provide a controlling legal standard provided a possibility of conflict with the Executive Branch. It is this potential conflict, concluded the district court, that underlies the act of state doctrine.

We do not agree with the district court's decision that the provision of the treaty requiring payment of prompt, just and effective compensation fails to provide a controlling legal standard. To the contrary,

---

**3.** The decision in *Dunhill* that commercial acts of a sovereign would not be entitled to immunity under the act of state doctrine is known as the "commercial act exception". However, that exception, like the Bernstein exception, was recognized by only a plurality of the Court. Only Chief Justice Burger and Justices Powell and Rehnquist joined in Justice White's opinion creating the exception. Thus, this exception also seems to be of doubtful precedential value.

we find that this is a controlling legal standard in the area of international law. As the appellant and amici correctly point out, the term "prompt, just and effective compensation" and similar terms are found in many treaties where the United States and other nations are parties.

The 1953 United States-Ethiopia Treaty of Amity and Economic Relations is one of a series of treaties, also known as the FCN Treaties, between the United States and foreign nations negotiated after World War II. As the legislative history of these treaties indicates, they were adopted to protect American citizens and their interests abroad. *See, e.g., Hearings on Commercial Treaties Before the Subcommittee of Senate Committee on Foreign Relations,* 83d Cong., 1st Sess. (1953); *Hearings on Commercial Treaties Before the Subcommittee on Commercial Treaties and Consular Conventions of the Senate Committee on Foreign Relations,* 82d Cong., 2d Sess. (1952). Almost all of these treaties contain sections which provide for "prompt, adequate, and effective compensation", "just compensation", or similar language regarding compensation for expropriated property.[4]

The United States District Court for the District of Columbia used a treaty to find a "treaty exception" in *American International Group, Inc. v. Islamic Republic of Iran,* 493 F.Supp. 522 (D.D.C.1980). There, several American insurance companies held investments in insurance companies doing business in Iran. After the Iranian revolution of 1979 the Iranian government nationalized the insurance industry, and did not compensate the American companies for their investments which had been expropri-

ated. The American insurance companies subsequently brought suit seeking damages for the property that had been expropriated without compensation.

The district court examined the 1957 Treaty of Amity between the United States and Iran, and concluded that the insurance companies were entitled to compensation. Specifically, the court examined Article IV, paragraph two, which stated:

> Property of nationals and companies of either High Contracting Party, including interests in property, shall receive the most constant protection and security within the territories of the other High Contracting Party, in no case less than that required by international law. *Such property shall not be taken except for a public purpose, nor shall it be taken without the prompt payment of just compensation.* Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof (emphasis added).

After examining the treaty the district court determined, *inter alia,* that the act of state doctrine did not preclude it from jurisdiction because the treaty was relevant, unambiguous, and set forth agreed-upon principles of international law, i.e., a standard for compensation for the expropriated property.[5] Accordingly, the district court granted plaintiffs' motion for a partial summary judgment on the issue of liability as a result of the expropriation of their property without compensation by the Iranian government.

---

**4.** We have provided an appendix to this opinion. Examples of these treaties with provisions for compensation for expropriated property are included. All of these treaties employ similar language.

**5.** The district court also held that the act of state doctrine was inapplicable because the court was not deciding the validity of Iran's expropriation of the plaintiff's interest, but rather it was adjudicating the failure of Iran to provide compensation for the expropriated property in violation of international law. It was also decided that

the act of state doctrine did not apply because of the commercial act exception of *Alfred Dunhill of London, Inc. v. Republic of Cuba, supra. American International Group,* 439 F.Supp. at 525.

We decline, however, to reverse the district court on these additional grounds. Our decision to reverse the district court is based only upon the existence of a treaty between the United States and Ethiopia which *may* provide a basis for Kal-Spice to receive compensation.

There is a striking similarity between the treaty in the present case and the one involved in *American International.* Both treaties contain similar provisions for compensation when property is expropriated by one of the nations that is a party to the treaty. Consequently, *American International* provides authoritative guidance to us on the use of the treaty exception, and illustrates the error of the district court's decision that the treaty in this case was too ambiguous to allow a court to exercise jurisdiction.

*Banco Nacional de Cuba v. Chase Manhattan Bank,* 658 F.2d 875 (2d Cir.1981), provides an example of the utility of the "prompt, just and effective compensation" standard that is employed in many treaties. In *Chase Manhattan Bank,* the Second Circuit was faced with the task of determining the value of Cuban branches of Chase Manhattan which had been expropriated by the Cuban revolutionary government.[6] After examining several theories regarding the appropriate standard for the compensation of expropriated property, the court concluded Chase Manhattan Bank was entitled to the net asset value of the branches that were expropriated by the Cuban government.

We do not suggest, however, by our citation of *Chase Manhattan Bank,* that the district court in the present case is bound to use the same method employed in *Chase Manhattan Bank* for determining compensation, if any, to which Kal-Spice will be entitled. There are sufficient factual differences in the present case and *Chase Manhattan Bank,* e.g., nature of the property expropriated, status of the expropriated property, the facts surrounding the expropriation, etc., which may call for a different compensation standard. The citation to *Chase Manhattan Bank* is only for the purpose of illustrating the point that

the standard of compensation provided for in the Treaty of Amity between Ethiopia and the United States can provide a basis for determining the extent of compensation to which Kal-Spice may be entitled.

Moreover, the Supreme Court's decision in *Sabbatino,* in addition to the *American International* and *Chase Manhattan Bank* decisions requires a reversal of the district court decision that the 1953 Treaty of Amity was too ambiguous to be susceptible to judicial interpretation. As the Supreme Court stated in *Sabbatino:*

> It should be apparent that the greater the degree of codification or consensus concerning a particular area of international law, the more appropriate it is for the judiciary to render decisions regarding it, since the courts can then focus on the application of an *agreed principle* to circumstances of fact rather than on the sensitive task of establishing a principle not inconsistent with the national interest or with international justice.

376 U.S. at 423, 84 S.Ct. at 937.

Numerous treaties employ the standard of compensation used in the 1953 Treaty of Amity between Ethiopia and the United States. Undoubtedly, the widespread use of this compensation standard is evidence that it is an agreed upon principle in international law.

Nor will adjudication in this matter interfere with any efforts by the Executive branch to resolve this matter. In fact, the Executive branch has also intervened in this matter through the Departments of State, Treasury, and Justice who have filed a joint amicus brief urging that the 1953 Treaty of Amity makes the act of state doctrine inapplicable. Obviously, the Executive branch feels that an adjudication in this matter is appropriate. Thus, the Su-

---

**6.** The Second Circuit relied upon *First National City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972) (Citibank) for its holding that the act of state doctrine was inapplicable. Noting that *Citibank* was a plurality opinion, the Second Circuit held that the act of state doctrine does not apply where: 1) the executive branch provides a *Bern-stein* letter advising the courts that it believes the act of state doctrine need not be applied; 2) there is no showing that an adjudication of the claim will interfere with foreign relations; and 3) the claim against the foreign sovereign is asserted by way of counterclaim and does not exceed the value of the sovereign's claim. 658 F.2d at 884.

preme Court's concern in *Sabbatino* for judicial interference with foreign policy activity by the Executive branch is not a consideration in this case.

Additionally, there is a great national interest to be served in this case, i.e., the recognition and execution of treaties that we enter into with foreign nations. Article VI of the Constitution provides that treaties made under the authority of the United States shall be the supreme law of the land. Accordingly, the Supreme Court has recognized that treaties, in certain circumstances, have the "force and effect of a legislative enactment." *See, e.g., Whitney v. Robertson*, 124 U.S. 190, 194, 88 S.Ct. 456, 458, 31 L.Ed. 386 (1888). The failure of this court to recognize a properly executed treaty would indeed be an egregious error because of the position that treaties occupy in our body of laws.

### Conclusion

Our decision that the 1953 Treaty of Amity makes the act of state doctrine inapplicable only begins this controversy. The district court must determine what rights, if any, the treaty confers upon Kal-Spice. We recognize that further proceedings will be an arduous task for all parties involved. However, proper briefing of this issue before the court should lead to the resolution of this dispute.

Accordingly, the decision of the district court dismissing appellant's counterclaim is reversed and remanded for further proceedings not inconsistent with this opinion.

## APPENDIX

### Property Protection Clauses in Modern FCN Treaties

| Treaty Partner | Treaty Provisions |
| --- | --- |
| Belgium – [1963] 14 U.S.T. 1284 | Art. IV(3): Nationals and companies of either Party shall not be expropriated of their property within the territories of the other Party except for public benefit and with the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken. Furthermore, adequate provision shall have been made not later than the time of taking for the determination and payment thereof. |
| Ethiopia – [1953] 4 U.S.T. 2134 | Art. VIII(2): Property of nationals and companies of either High Contracting Party, including interests in property, shall receive the most constant protection and security within the territories of the other High Contracting Party. Such property shall not be taken except for a public purpose nor shall it be taken without the prompt payment of just and effective compensation. |
| France – [1960] 11 U.S.T. 2398 | Art. IV(3): Property of nationals and companies of either High Contracting Party shall not be expropriated within the territories of the other High Contracting Party except for a public purpose and with payment of a just compensation. Such compensation shall represent the quivalent of the property taken; it shall be accorded in an effectively realizable form and without needless delay. Adequate provision for the determination and payment of the said compensation must have been made no later than the time of the taking. |
| Greece – [1954] 5 U.S.T. 1829 | Art. VII(3): Property of nationals and companies of either Party shall not be taken within the territories of the other Party except for public benefit, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall |

represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof. It is understood that withdrawal of such compensation shall be in accordance with applicable laws and regulations consistent with the provisions of Article XV of the present Treaty. The provisions of the present paragraph shall extend to interests held directly or indirectly by nationals and companies of either Party in property which is taken within the territories of the other Party.

**Iran – [1957]**
**8 U.S.T. 899**

Art. IV(2): Property of nationals and companies of either High Contracting Party, including interests in property, shall receive the most constant protection and security within the territories of the other High Contrcting [sic] Party, in no case less than that required by international law. Such property shall not be taken except for a public purpose, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof.

**Israel – [1954]**
**5 U.S.T. 550**

Art. VI(3): Property of nationals and companies of either Party shall not be taken except for public purposes, nor shall it be taken without the payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and prompt payment thereof.

**Japan – [1953]**
**4 U.S.T. 2063**

Art. VI(3): Property of nationals and companies of either Party shall not be taken within the territories of the other Party except for a public purpose, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the proerty [sic] taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof.

**Korea – [1957]**
**8 U.S.T. 2217**

Art. VI(4): Property of nationals and companies of either Party shall not be taken within the territories of the other Party except for a public purpose, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof.

**Nicaragua – [1958]**
**9 U.S.T. 449**

Art. VI(4): Property of nationals and companies of either Party shall not be expropriated within the territories of the other Party except for public purposes and reasons of social utility as defined by law, nor shall it be expropriated without prompt and just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provisoin [sic] shall have been made at or prior to the time of the expropriation for determining and effecting such compensation.

| | |
|---|---|
| Oman – [1960]<br>11 U.S.T. 1835 | Art. IV(2): Property of nationals and companies of either Party, including direct and indirect interests in property, shall receive all possible protection and security within the territories of the other Party. Such property shall not be taken except for a public purpose, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision to the time of taking for the determination and payment thereof. |
| Pakistan – [1961]<br>12 U.S.T. 110 | Art. VI(4): Property of nationals and companies of either Party shall not be taken within the territories of the other Party except for a public purpose, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof. |
| Togo – [1967]<br>18 U.S.T. 1 | Art. IV(2): Property of nationals and companies of either Party, including direct or indirect interests in property, shall receive the most constant protection and security within the territories of the other Party. Such property shall not be taken except for a public purpose, nor shall it be taken without the prompt payment of just compensation. Such compensation shall be in an effectively realizable form and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for the determination and payment thereof. |
| Vietnam – [1961]<br>12 U.S.T. 1703 | Art. IV(2): Property of nationals and companies of either Party, including direct or indirect interests in property, shall receive the most constant protection and security within the territories of the other Party. Such property shall not be taken except for a public purpose, nor shall it be taken without the payment of just compensation. Such compensation shall be in an effectively realizable form and with unnecessary delay, and shall represent the full equivalent of the property taken; and adequate provision shall have been made at or prior to the time of taking for determination and payment thereof. |