**KALAMAZOO SPICE EXTRACTION COMPANY, Plaintiff,**

v.

**The PROVISIONAL MILITARY GOVERNMENT OF SOCIALIST ETHIOPIA, Defendant.**

No. K81–17 CA.

United States District Court, W.D. Michigan, S.D.

Aug. 26, 1985.

Eric V. Brown, Sr., Thomas G. Parachini, Karen L. Brissette, Miller, Canfield, Paddock & Stone, Kalamazoo, Mich., Mark B. Feldman, John P. Dean, Donovan, Leisure, Newton & Irvine, Washington, D.C., for plaintiff.

Burt Burgoyne, Bromberg, Robinson, Shapero, Cohn & Burgoyne, Southfield, Mich., Thomas D. Carey, Carey, Durham & Risdon, Kalamazoo, Mich., Jack Weinberg, Graubard, Moskovitz, McGoldrick, Dannett, Horowitz & Mollen, New York City, for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This is one of two lawsuits pending in this Court which arose out of the expropriation of a majority of the stock of the Ethiopian Spice Extraction Share Company (ESESCO) by the Provisional Military Government of Socialist Ethiopia (the PMGSE). Earlier in this litigation, the PMGSE filed a motion to dismiss, challenging this Court's jurisdiction on several grounds. In an Opinion filed July 6, 1982, and reported at 543 F.Supp. 1224 (W.D. Mich.1982), this Court concluded that jurisdiction over plaintiff's claims was precluded by the Act of State Doctrine. The Court, therefore, did not reach all of the arguments defendant offered in support of its motion to dismiss. Plaintiff appealed that decision and the Sixth Circuit reversed, holding that the 1953 Treaty of Amity and Economic Relations between the United States and Ethiopia made the Act of State Doctrine inapplicable to the contro-versy presented by this lawsuit. *Kalamazoo Spice Extraction Co. v. Provisional Military Government of Socialist Ethiopia,* 729 F.2d 422 (6th Cir.1984).

Following the remand by the Sixth Circuit, defendant renewed its motion to dismiss based on the jurisdictional arguments which the Court had not addressed in its previous Opinion. It is that renewed motion for dismissal which is now before the Court. Central to the determination of the jurisdictional questions raised by defendant's motion are certain facts surrounding the history of ESESCO, its relationship to the PMGSE, and the events giving rise to these lawsuits.

Plaintiff in this case, Kalamazoo Spice Extraction Company (KAL–SPICE), formed and incorporated ESESCO under the laws of Ethiopia in 1966. Just prior to the Ethiopian government's expropriation decree in 1975, KAL–SPICE owned eighty percent of the stock of ESESCO. As the majority stockholder, KAL–SPICE exerted control over the operation of the company and the utilization of the company's assets.

The PMGSE expropriated ESESCO and assumed operation and control early in 1975. It issued an expropriation decree declaring that, as of February 3, 1975, it assumed a majority shareholding in ESES-CO. Plaintiff's Exhibit A, at 7. A letter from the PMGSE's Ministry of National Resources Development received by ESES-CO in February, 1975, documents the PMGSE's appointment of three members to the five member Board of Directors. Plaintiff's Exhibit B. Minutes of a July 3, 1975, Board of Directors meeting indicate that three directors representing the PMGSE's interests were present and conducted ESESCO business. Plaintiff's Exhibit C.

Although it was not immediately clear whose shares had been expropriated, a November 1977 letter from the PMGSE's Ministry of Industry informed ESESCO that the Government had taken its fifty-one percent interest proportionally from each of ESESCO's shareholders. Plaintiff's Exhibit B. By that formula, KAL–SPICE's origi-

nal eighty percent interest had been reduced to approximately forty percent.

Even though the government had assumed control of ESESCO, the company continued to ship oleoresin spices [1] to KAL–SPICE pursuant to a contract existing between the parties. Those shipments and previous shipments generated accounts receivable which were payable in the United States. It is those accounts receivable which ESESCO is attempting to recover in K79–400 (Case One).

## MOTION TO DISMISS

The Provisional Military Government of Socialist Ethiopia has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b). In that motion, the PMGSE argues that dismissal is warranted on three grounds: 1) that this Court lacks subject matter jurisdiction over KAL–SPICE's claims; 2) that the Court lacks personal jurisdiction over the government of Ethiopia; and 3) that venue is improper in this district. The Court will consider each of these arguments in turn.

### Subject Matter Jurisdiction

■ KAL–SPICE alleges that this Court has jurisdiction over the claims against the PMGSE pursuant to the Foreign Sovereign Immunities Act of 1976 (FSIA), Pub.L. No. 94–583, 90 Stat. 2891 (1976). That statute amended Title 28 of the United States Code "to define the jurisdiction of the United States courts in suits against foreign states [and] the circumstances in which foreign states are immune from suit and in which execution may not be levied on their prop-

---

1. An oleoresin is a semi-processed extract from a raw spice. *See* Complaint ¶ 9.

2. The "foreign state" referred to in section 1330 and elsewhere in the FSIA is defined in section 1603 as follows:
   § 1603. Definitions
   For purposes of this chapter—
   (a) A "foreign state," except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
   (b) An "agency or instrumentality of a foreign state" means any entity—

erties." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604. The grant of jurisdiction under the FSIA is codified at 28 U.S.C. § 1330 which provides in part:

§ 1330. Actions against foreign states
(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

*See also* 28 U.S.C. § 1604.[2]

KAL–SPICE argues that this action falls within an exception created by section 1605 and that the PMGSE is therefore not entitled to immunity. Section 1605(a)(3) provides that:

§ 1605. General exceptions to the jurisdictional immunity of a foreign state
(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

.    .    .    .    .

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged

(1) which is a separate legal person, corporate or otherwise and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.
Because the PMGSE owns fifty-one percent of ESESCO, section 1603(a) and (b)(2) provide that ESESCO is considered a "foreign state" for purposes of interpretation of section 1605.

for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

Thus, in order to find subject matter jurisdiction under the section 1605(a)(3) exception, this Court must find: 1) that rights in property are at issue, 2) that the property was taken in violation of international law, and 3) that either of the two jurisdictional nexus requirements of the statute are satisfied.[3] Because the Court finds that each of these requirements is met, it concludes that it has subject matter jurisdiction in this case.

The rights in property that are at issue are the assets of ESESCO. Although the PMGSE purported to seize only fifty-one percent of KAL–SPICE's stock, KAL–SPICE's complaint alleges that, without majority ownership and control, its remaining stock is worthless. Complaint ¶ 12. Thus, in addition to claiming an unlawful taking of its stock, KAL–SPICE claims there has been a *de facto* taking of its interest in the physical assets of ESESCO.[4]

The PMGSE argues that, at the most, KAL–SPICE has lost its rights to stock in ESESCO and that section 1605(a)(3) of the FSIA was not intended to apply to intangible property rights, such as rights in stock. *See Canadian Overseas Ores, Ltd. v. Compania de Acero*, 528 F.Supp. 1337 (S.D.N.Y.1982) (holding that contractual rights to payment, absent an expropriation of real property, do not constitute "property" within the meaning of section 1605(a)(3)), *aff'd*, 727 F.2d 274 (2d Cir. 1984). The PMGSE informs the Court that, under Ethiopian law, as under United States law, a shareholder generally has no direct right to the assets of a corporation until the dissolution of the corporation. Ethiopian Commercial Code, Art. 345(1) ("Every share shall confer a right to participation in the annual net profits and to a share in the annual net proceeds on a winding up"); *see also Owens v. Commissioner of Internal Revenue*, 568 F.2d 1233, 1238–39 (6th Cir.1977); *First National Bank v. Perfection Bedding Co.*, 631 F.2d 31 (5th Cir.1980). Thus, because it seized a majority of the stock of ESESCO, rather than its physical assets, the PMGSE contends that the 1605(a)(3) exception does not apply.

Without deciding whether section 1605(a)(3) would apply if the PMGSE had seized less than a majority interest in the stock of ESESCO, the Court concludes that section 1605(a)(3) can only logically be interpreted to encompass the property interest seized in this case. It would not make sense to distinguish between the expropriation of the physical assets of a company, which would clearly fall within section 1605(a)(3), and expropriation of a controlling interest in the stock of the company. In either case, the foreign state has expropriated control of the assets and profits of the corporation. Thus, the Court concludes that the property at issue in this case is the kind of property that is subject to this Court's jurisdiction under section 1605.[5]

With respect to the second requirement, KAL–SPICE alleges that the PMGSE has violated international law by failing to pay compensation for the seized property. The PMGSE, in defense, alleges that it tendered an offer to pay 946,939 Ethiopian birr, approximately $460,000, as compensation. Claiming that the property was

---

**3.** *See generally* Kahale & Vega, *Immunity and Jurisdiction: Toward a Uniform Body of Law in Actions Against Foreign States,* 18 Col.J. Transnat'l L. 211, 252–256.

**4.** The Court does not intend to rule at this point whether the PMGSE's expropriation of a majority of the stock of ESESCO, as a matter of law, amounts to a *de facto* taking of the physical assets of ESESCO. The Court is merely noting the allegations made in KAL–SPICE's complaint.

**5.** *Canadian Overseas Ores, Ltd. v. Compania de Acero,* 528 F.Supp. 1337 (S.D.N.Y.1982), *aff'd,* 727 F.2d 274 (2d Cir.1984), is not to the contrary. That case did not involve an expropriation but the simple repudiation of a contractual obligation. 528 F.Supp. at 1346–47. In this case, no one disputes that the PMGSE expropriated some kind of property, whether stock or assets.

worth $11 million, KAL–SPICE rejected the offer. The PMGSE contends that, because it made the offer, it has not violated international law and that the Court, therefore, cannot find jurisdiction under section 1605(a)(3).

The Court is unable to conclude on the record before it whether or not the PMGSE violated international law in expropriating KAL–SPICE's property. There are a number of factual disputes that the Court will have to resolve before it can determine whether there has been a violation of international law. When factual issues are determinative of both the jurisdictional question and the merits, as here, a court must assert jurisdiction unless the claim is insubstantial or frivolous. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Odom v. Slavik*, 703 F.2d 212, 216 (6th Cir.1983).[6] KAL–SPICE's claims are neither insubstantial nor frivolous. Because plaintiff has made a substantial allegation of a violation of international law, the Court must assert jurisdiction.

Finally, the Court must determine whether either of the statutory jurisdictional nexus conditions is satisfied. The Court finds that the second condition, which requires that the property at issue be owned or operated by an agency or instrumentality of the foreign state which is engaged in a commercial activity in the United States, is satisfied in this case. The PMGSE owns a majority interest in ESESCO. Thus, pursuant to section 1603(b), ESESCO is an agency or instrumentality of the Ethiopian government.[7] The property at issue here, ESESCO's assets, is clearly owned by ESESCO. The only remaining question is whether ESESCO is engaged in commercial activity in the United States.

The record supports plaintiff's claim that ESESCO is in fact involved in commercial activities here. Plaintiff's Exhibit E, to which defendant has raised no objections, indicates that at least $1.2 million worth of oleoresins were sold to plaintiff in the United States after the February 3, 1975, nationalization. At least another $3.7 million worth were sold after the nationalization to companies in the United States other than plaintiff. Plaintiff's Exhibit F. Further, ESESCO has purchased supplies from at least one United States company. Plaintiff's Exhibit G. Thus, the jurisdictional nexus required by section 1605(a)(3) is present in this case.

■ Even if subject matter jurisdiction is available under the FSIA, the PMGSE argues that Article XVII of the 1953 Treaty of Amity and Economic Relations between the United States and Ethiopia deprives this Court of any authority to hear the case. Article XVII provides that:

> Any dispute between the High Contracting Parties as to the interpretation or application of the present Treaty, not satisfactorily adjusted by diplomacy, shall at the request of either High Contracting Party be submitted to the International Court of Justice, unless the High Contracting Parties agree to settlement by some other pacific means.

The Court notes that Article I of the treaty identifies the "two High Contracting Parties" as the nations of the United States and Ethiopia. The dispute before this Court is between the Ethiopian government and KAL–SPICE, a Michigan corporation. KAL–SPICE is not a High Contracting Party and is, therefore, not bound by the provisions of Article XVII.

The PMGSE also argues that KAL–SPICE is precluded from bringing an action in this Court by Article VII of the Treaty which provides that "nationals and companies of either High Contracting Party shall have free access to the courts of justice and administrative agencies within the territories of the other High Contracting Party...." Article VII does not sug-

---

**6.** *See also* Kahale & Vega, *supra* note 3, at 253 (noting that the requirement that there be a violation of international law "in effect merges the substantive cause of action with the jurisdictional issue").

**7.** *See supra* note 2.

gest that such companies *are limited* to relief through the courts or administrative agencies of the foreign state. Thus, it would not appear to preclude this action. Further, the governmental entity which the PMGSE suggests should hear this claim is the Ethiopian Compensation Commission, an entity that the PMGSE refers to in its brief as a "negotiating" arm of the state. Defendant's Supplemental Memorandum at 7; *see also* Plaintiff's Exhibit L ¶ 7. The Compensation Commission does not appear to fit within the category of adjudicative bodies defined by the phrase "courts of justice or administrative agencies."

Thus, the Court finds that the section 1605(a)(3) exception to the general grant of sovereign immunity provides this Court with subject matter jurisdiction in this case. Further, the Court's authority to hear the case is not precluded by the 1953 Treaty. Defendant's motion to dismiss on those grounds must be denied.

*Personal Jurisdiction*

■ The PMGSE also argues that this Court lacks personal jurisdiction over it. The Court does not find this argument persuasive.

The FSIA provides that a federal court has personal jurisdiction over a defendant so long as it has subject matter jurisdiction under section 1330 and so long as proper service has been made on defendant under section 1608.[8] 28 U.S.C. § 1330(b); *see Alberti v. Empresa Nicaraguense de la Carne*, 705 F.2d 250, 252 (7th Cir.1983); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 313 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). The Court has determined that subject matter jurisdiction exists. Defendants have not objected to plaintiff's service of process. Thus, statutory personal jurisdiction exists.

■ Besides determining whether the statutory requirements are met, the Court must determine whether personal jurisdiction over this defendant is constitutionally proper. The due process clause of the fifth amendment requires that certain minimum contacts must exist between a defendant and the forum before a court may assert personal jurisdiction over that defendant. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The minimum contacts requirement is equally applicable when the defendant is a foreign state. *See, e.g., Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028–29 (D.C.Cir.1982); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d at 313–15. In such a case, the weight of authority holds that the relevant question is whether the foreign state has sufficient contacts with the United States as a whole, rather than with any particular state, so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See e.g., Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344, 1352–53 (11th Cir.1982); *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d at 314; *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 273 (3d Cir.1980); *Transamerican S.S. Corp. v. Somali Democratic Republic*, 590 F.Supp. 968, 977 (D.D.C.1984). *Contra Thos. P. Gonzalez Corp. v. Consejo Nacional*, 614 F.2d 1247, 1255 (9th Cir.1980) (considering contacts with forum state). The Court finds the reasoning of the majority persuasive and will thus apply the due process test in context of defendant's contacts with the United States as a whole.

■ If the named defendant in this suit were ESESCO, it is clear that the relevant minimum contacts would exist. As discussed above, ESESCO sold over $3 million worth of oleoresins to United States companies after the expropriation. The majority of those oleoresins were shipped to the United States. Plaintiff's Exhibits E and F. ESESCO solicited sales from a number of United States companies. *See* Plaintiff's Exhibit N ¶ 14. An officer of ESESCO

---

**8.** The House Report on the FSIA indicates that Congress intended section 1330(b) to, in effect, serve as a Federal long-arm statute over foreign states. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 13, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6612.

has, on numerous occasions, visited at least two of its United States customers, one in New Jersey, the other in New York. Plaintiff's Exhibit N ¶ 45. Further, ESESCO is seeking the protection of this Court in Case One, its action against KAL–SPICE for money due on a contract for purchase of oleoresins.

ESESCO is not, however, the defendant in this case. Thus, the Court must resolve whether the contacts of ESESCO with the United States may be imputed to the PMGSE, the named defendant.

In *First National City Bank v. Banco Para El Comerica Exterior de Cuba*, 462 U.S. 611, 626–28, 103 S.Ct. 2591, 2600–01, 77 L.Ed.2d 46 (1983), the Supreme Court held that duly created instrumentalities of a foreign state are to be accorded a presumption of independent status. The Supreme Court also recognized, however, that equitable principles would permit a court to disregard the separate identities of a sovereign and its instrumentalities where the corporation was so extensively controlled by its owner that a relationship of principal and agent is created, where recognition of the separate corporate identity would work a fraud or injustice, or where the corporate form is used to defeat legislative policies. 462 U.S. at 628–30, 103 S.Ct. 2601–02. Based on the current record, the Court is persuaded that this is a case in which the separate juridical identities of ESESCO and the PMGSE should be disregarded.

After expropriating a majority of the ESESCO stock, the PMGSE exercised direct control over the operation of ESESCO by appointing a majority of the board of directors and requiring that all checks in excess of approximately $25,000 be signed by one of the government appointed directors. Plaintiff's Exhibits B and D. Furthermore, the Ministry of National Resources Development, the governmental agency that took over ESESCO under the Provisional Military Council Declaration of Economic Policy, approved all invoices for shipments of oleoresins exceeding approximately $13,000. Affidavit of Selashe Kebede ¶ 3. Several invoices for shipments

sent to the United States bear the seal of the PMGSE. Others bear the new corporate seal of ESESCO, which reads "The Provisional Military Government of Socialist Ethiopia—Ethiopian Spice Extraction Share Company." Affidavit of Selashe Kebede ¶¶ 6, 7. While thus controlled by the PMGSE, ESESCO invoked the jurisdiction of this Court to recover payment for shipments of oleoresins to KAL–SPICE during the period from February to May, 1975.

The Court concludes that ESESCO's contacts with the United States must be attributed to the PMGSE for purposes of the minimum contacts due process analysis. To continue to recognize the separate legal status of ESESCO under these circumstances would insulate the PMGSE from liability for its expropriation of KAL–SPICE's property interest in ESESCO while permitting the PMGSE, through ESESCO, to profit from its commercial activities in the United States and to even assert a claim against KAL–SPICE to recover payment for assets of ESESCO sold in this country. Based on all the above mentioned factors, the Court concludes that maintenance of this suit against the PMGSE in this forum does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Thus, this Court may assume personal jurisdiction over the PMGSE in the context of this case.

*Venue*

■ Finally, defendant PMGSE argues that venue is not proper in this district. Defendant contends that venue is appropriate only in the District of Columbia.

Although venue would be proper in the District of Columbia pursuant to 28 U.S.C. § 1391(f)(4), it is also proper in this district. Section 1391(f)(1) provides that venue exists in any judicial district in which a substantial part of the property that is the subject of the action is situated. In this case, the accounts receivable, totalling nearly $2 million, that are at issue in Case One are present in this district. *Cf. Vishipco Line v. Chase Manhattan Bank*,

*N.A.,* 660 F.2d 854, 862 (2d Cir.1981), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982) (accounts receivable, for purposes of the Act of State doctrine, are located at the situs of the debtor). Those accounts receivable are a substantial portion of the assets of ESESCO, the property that is the subject of this action. Thus, venue is proper in this district.

## ORDER

In accordance with the Opinion dated August 26, 1985, IT IS HEREBY ORDERED that defendant's motion to dismiss is denied.

IT IS SO ORDERED.