# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2012

No. 12-30383

Lyle W. Cayce
Clerk

COVINGTON MARINE CORPORATION; EXPLORER INVESTMENT COMPANY; PIONEER INVESTMENT COMPANY; WASHINGTON MARINE CORPORATION,

Plaintiffs-Appellants

v.

XIAMEN SHIPBUILDING INDUSTRY COMPANY, LIMITED,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-cv-07041

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

PER CURIAM:[*]

Covington Marine Corp., Explorer Investment Co., Pioneer Investment Co., and Washington Marine Corp. appeal a district court's decision to deny confirmation of a foreign arbitral award under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards against Xiamen Shipbuilding Industry Co., Ltd., and the People's Republic of China. This case

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30383

raises issues substantially identical to those addressed by our opinion (issued contemporaneously herewith) in *First Investment Corporation of the Marshall Islands v. Fujian Mawei Shipbuilding*, No. 12-30377, which was consolidated for argument with the present case. We issue the following opinion to address issues unique to this case. For the reasons that follow, we AFFIRM the district court's judgment dismissing the petition to confirm the arbitral award.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Covington Marine Corp., Explorer Investment Co., Pioneer Investment Co., and Washington Marine Corp. (collectively "Covington") are shipbuilding companies registered in the Marshall Islands. On February 23, 2003, Covington entered into a contract with Xiamen Shipbuilding Industry Co., Ltd. ("Xiamen") for the construction and purchase of four bulk carrier vessels. Xiamen is a Chinese shipbuilding and petroleum producer, based in Xiamen, Fujian province, China. A contractual dispute eventually arose between Covington and Xiamen and, in accordance with a contractual arbitration clause, Covington referred the matter to arbitration under the rules of the London Maritime Arbitration Association in May 2003.

Arbitration proceedings took place in October of 2004. On January 11, 2005, the arbitral tribunal issued a final award finding neither party liable. Covington appealed the decision to the English High Court of Justice ("High Court") on May 26, 2005. Shortly thereafter, on May 31, 2005, the arbitral tribunal issued a separate costs award, apportioning 40% of the costs to Covington and 60% to Xiamen.

In July 2005, Xiamen filed a petition in a Chinese court to recognize and enforce the arbitral tribunal's liability award under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (entered into force with respect to the United States Dec. 29, 1970) ("New York Convention"), *implemented in* 9

2

No. 12-30383

U.S.C. §§ 201, *et seq.* Covington followed suit on November 21, 2005, and asked that the Chinese court recognize and enforce the arbitral tribunal's costs award. The Chinese court granted both petitions on August 18 and December 21, 2005, respectively.

On December 16, 2005, the High Court reversed the arbitral tribunal's ruling on liability and held Xiamen liable for breach of contract, as well as 100% of costs, and ordered the arbitral tribunal to modify its award. Xiamen appealed the High Court's ruling, but its petition to appeal was denied on July 31, 2006. Accordingly, on October 26, 2006, the arbitral tribunal re-issued its final liability award, and on July 3, 2007, re-issued its costs award. Covington then filed petitions in China seeking to vacate the original judgments and recognize the new awards in March and April 2007. The proceedings in the Chinese court are unresolved, but appear to have been referred to the Fujian Higher Court.

On October 26, 2009, Covington filed a petition in the District Court for the Eastern District of Louisiana to confirm the arbitral tribunal's awards on liability and costs against both Xiamen and the People's Republic of China ("PRC"). A certificate of default was entered as to Xiamen and the PRC on April 27, 2010. Covington then filed a motion for entry of default. On November 16, 2010, Xiamen filed a motion to vacate. The district court granted the motion on January 18, 2011. Thereafter, a second certificate of default was entered on April 27, 2011. Xiamen again moved to vacate default. By agreement of the parties, the certificate of default was vacated as to Xiamen on July 11, 2011. The district court also granted Xiamen's motion to vacate default as to the PRC on February 28, 2012, and also determined that it lacked subject matter jurisdiction over the PRC, and dismissed the PRC from the case.

On July 25, 2012, Xiamen filed a motion to dismiss the petition or, in the alternative, to refuse confirmation of the arbitration award. The district court

No. 12-30383

granted Xiamen's motion to dismiss for lack of personal jurisdiction on March 14, 2012.

Covington filed a timely notice of appeal on April 11, 2012. We consolidated this case with *First Investment Corporation of the Marshall Islands v. Fujian Mawei Shipbuilding*, No. 12-30377 ("*First Investment*"), for argument only, and heard arguments on December 3, 2012.

## II. DISCUSSION

As noted, the district court dismissed Xiamen for lack of personal jurisdiction and, in a separate order, dismissed the PRC for lack of subject matter jurisdiction. On appeal, Covington argues that foreign entities without property or presence in the United States are not entitled to the protections of constitutional due process. Further, Covington argues that the New York Convention provides the only grounds for denying confirmation of an award, and that these grounds do not include personal jurisdiction. Covington also argues that it need not establish personal jurisdiction as to Xiamen because Xiamen is an alter ego of the PRC, and a court need not have personal jurisdiction over a foreign state. Seemingly applying the same reasoning, Covington asks that we confirm the arbitration award against the PRC, despite the PRC not having been a party to the arbitration agreement. Finally, Covington contends that, to the extent it has not demonstrated an alter ego relationship between Xiamen and the PRC, the district court erred in not permitting jurisdictional discovery.

The majority of Covington's legal arguments are addressed by our decision in *First Investment*. In that opinion, we concluded that foreign entities may raise a personal jurisdiction defense under the New York Convention as a matter of constitutional due process. Here, we address only those arguments that are factually distinct or that were not raised in *First Investment*. We thus consider whether Covington has established an alter ego relationship between Xiamen and the PRC, and whether Covington was entitled to jurisdictional discovery.

## A.    Alter Ego Theory

Before the district court, Covington argued that it was not required to establish personal jurisdiction over Xiamen because Xiamen was a company, agency, or instrumentality controlled by the PRC.  Referring to its February 28, 2012 decision dismissing the PRC for lack of subject matter jurisdiction, the district court concluded that Covington had not alleged facts sufficient to establish an alter ego relationship between Xiamen and the PRC.  The court rejected Covington's contention that sufficient control was established based on evidence that the PRC controlled three of Xiamen's major shareholders, a representative of the Chinese Communist Party inspected one of Xiamen's properties, and Xiamen listed, as one of its objectives, "strength[ening] China with shipbuilding."

As discussed in greater detail in *First Investment*, a party attempting to show an alter ego relationship between a foreign state and its instrumentality faces a high bar.  *See, e.g.*, *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 713 F. Supp. 2d 267, 279 (S.D.N.Y. 2010) (control over board of directors through shareholder voting rights did not establish government control over bank's day-to-day affairs); *Minpeco, S.A. v. Hunt*, 686 F. Supp. 427, 437 (S.D.N.Y. 1988) (alter ego relationship not established by evidence that foreign supreme court voided arbitration agreement between corporation and private miners where decision did not depend on evidence of fraud, injustice, or excessive intrusion by government).  We start by observing that "duly created instrumentalities of a foreign state are to be accorded a presumption of independent status." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983).  To overcome this presumption a party must show "that the instrumentality is the agent or alter ego of the foreign state." *Dale v. Colagiovanni*, 443 F.3d 425, 429 (5th Cir. 2006).  "[W]e look to the ownership and management structure of the instrumentality, paying

particularly close attention to whether the government is involved in day-to-day operations, as well as the extent to which the agent holds itself out to be acting on behalf of the government." *Walter Fuller Aircraft Sales, Inc. v. Republic of Phillippines*, 965 F.2d 1375, 1382 (5th Cir. 1992) (citing *Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 178, 181 (5th Cir. 1989)). Finally, we consider whether we must disregard the instrumentality's corporate form to prevent a fraud or injustice. *See Bridas S.A.P.I.C. v. Government of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006).

The evidence the district court discussed clearly is insufficient to establish the control necessary to establish an alter ego relationship. *See Kalamazoo Spice Extraction Co. v. Provisional Military Government of Socialist Ethiopia*, 616 F. Supp. 660, 666 (W.D. Mich. 1985) (foreign corporation's contacts with United States could be imputed to government defendant where defendant exercised direct control over the corporation, appointed majority of board of directors, required checks in excess of certain amount be signed by a government-appointed director, required government ministry to approve invoices for certain shipments, and included own seal on some of the invoices for shipments sent to the United States). Covington has not shown that the PRC reviewed Xiamen's management decisions, took a direct role in managing Xiamen's business, or otherwise required authorization for performing certain acts.

Covington draws attention to the declaration of Evan Breibart, which does not appear to have been considered by the district court. The Breibart declaration shows that Covington's Chinese experts asked Covington not to use their declarations in any action against the PRC for fear of negative repercussions to their personal safety or career advancement. Such allegations show, at best, a perception by Covington's experts that the PRC would respond adversely to the experts' involvement in a lawsuit against the PRC. The

allegations do not demonstrate that the PRC controlled Xiamen. The allegations also do not show that the PRC used Xiamen's corporate form to commit a fraud or injustice. *See Bridas S.A.P.I.C.*, 447 F.3d at 417.

Accordingly, Covington has not established that Xiamen is an alter ego of the PRC. Xiamen was thus entitled to raise a personal jurisdiction defense and the district court was empowered to dismiss Xiamen as a party on those grounds. Likewise, the district court correctly dismissed the PRC for lack of subject matter jurisdiction on sovereign immunity grounds *See* 28 U.S.C. § 1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" except under statutorily defined exceptions). Because Xiamen is not an alter ego of the PRC, Xiamen could not bind the PRC to an arbitration agreement that the PRC was not a party to, and thus could not bring it within the arbitration exception of the Foreign Sovereign Immunity Act, 28 U.S.C. § 1605(a)(6).

## B.    Jurisdictional Discovery

The district court denied Covington's request to conduct limited discovery into the relationship between Xiamen and the PRC. Noting that Covington had merely alleged that Xiamen was controlled or owned by the PRC, without alleging any specific facts, the district court held that permitting discovery would be contrary to our decision in *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528 (5th Cir. 1992). Covington points to the Breibart declaration as demonstrating "the PRC's active and pernicious interference in [Covington's] attempts to obtain confirmation of the final arbitration award," thereby entitling Covington to engage in jurisdictional discovery.

We review a district court's discovery rulings for abuse of discretion. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000). The Breibart declaration only shows that Covington's Chinese experts asked that their declarations not be used in enforcement proceedings against the PRC for fear of

negative repercussions. Absent from the Breibart declaration is any indication that the PRC and Xiamen cooperated to intimidate Covington's experts into withdrawing. Covington's general allegations fall far short of the "specific facts" this court has required before approving discovery into a foreign sovereign's affairs. *Arriba Ltd.*, 962 F.2d at 537 n.17. Accordingly, the district court's decision not to permit jurisdictional discovery on the basis of such sparse allegations did not constitute an abuse of discretion.

## III.  CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED in all respects.